**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------X
ADIL KHAN,

                        Plaintiff,

       -against-

UNITED STATES OF AMERICA,

                        Defendants.
---------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**
05 CV 2015 (ADS)(ARL)

**APPEARANCES:**

**ADIL KHAN**
Pro Se Petitioner
# 68370-053
FCI-Fort Dix
P.O. Box 7000
Fort Dix, NJ 08640

**ROSLYNN MAUSKOPF**
United States Attorney for the Eastern District of New York
Attorney for the Defendant
610 Federal Plaza
Central Islip, New York 11722-4454
      By:    Bonnie S. Klapper, Assistant U.S. Attorney

**SPATT, District Judge.**

Adil Khan ("Khan" or the "Petitioner") flied this petition, pro se, pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Khan was sentenced by this Court on March 9, 2004, following his December 13, 2002 plea of guilty to the crime of conspiracy to defraud the Internal Revenue Service in violation of 18 U.S.C. § 371. The Petitioner's principal claims are: (1) his counsel was ineffective in failing

to object to the imposition of sentencing enhancements; and (2) his sentence was unconstitutional in light of United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), the Supreme Court decision that rejected the mandatory application of the Federal Sentencing Guidelines. Having reviewed the submissions of the parties as well as portions of the original criminal record, the court concludes that the petition must be denied.

## I. BACKGROUND

Khan was convicted on his plea of guilty to a one-count information for conspiracy to defraud the Internal Revenue Service. The offense arose out of Khan's involvement in a fraudulent tax return scheme in which he would obtain personal identification information from the accountant he worked for and use the information to file false returns. Upon submitting the false returns to the IRS, Khan would receive unlawful refunds. Khan's scheme included co-conspirators who would cash the fraudulently obtained checks for a percentage of the refund. In total, Khan submitted more than 1.9 million dollars in fraudulent refund requests, but was only successful in obtaining approximately $350,000.

On December 13, 2002, Khan entered into a plea agreement ("Plea Agreement"), which stated that the defendant's sentence was governed by the United States Sentencing Guidelines ("U.S.S.G."). The Plea Agreement estimated that the defendant's adjusted offense level for this offense would be 19, based upon the

following calculations. There was a base offense level of 18 for receiving fraudulent funds in the amount of $350,000; a 4 point enhancement under U.S.S.G. § 3B1.1(a) for his role in the offense; and a three point reduction for acceptance of responsibility. The Plea Agreement calculated that an adjusted offense level of 19 carried a range of imprisonment of 30-37 months, "assuming that the defendant is within criminal history category I." The Plea Agreement contained a disclaimer that the estimates were not binding on the United States Attorney, the Probation Department, or the Court.

The Plea Agreement further stated that "the defendant will not file an appeal or otherwise challenge the conviction or sentence in the event that the Court imposes a term of imprisonment of 37 months or below." The Plea Agreement also stated that the waiver would be binding on the defendant "even if the Court employs a Guidelines analysis different . . ." from the one estimated in the Plea Agreement. At the plea allocution, United States Magistrate Judge Arlene R. Lindsay advised the defendant that if the Court "were to sentence you to 37 months or less, that you also give up your right to appeal the sentence of the Court. Do you understand that?" Khan replied, "Yes." Transcript of Plea December 13, 2002 at 15.

Prior to sentencing, the Presentence Investigation Report ("PSR") from the Probation Department recommended that Khan be sentenced at a total offense level of 23, which calls for a range of 46-57 months imprisonment. The higher offense level

was based on the Probation Department's determination that Khan should be held accountable not only for the actual loss of $350,000, but also for the intended loss. This combined amount was estimated at $1,856,206. In addition, the Probation Department enhanced his sentence recommendation 4 levels based on its conclusion that the defendant supervised five or more individuals according to U.S.S.G. § 3B1.1(a), and that the offense involved sophisticated means according to § 2T1.1(b)(2).

On February 27, 2004, Khan appeared for sentencing and his counsel challenged the use of the intended loss in calculating the offense level in the PSR. Defense counsel also challenged the PSR's determination that the offense involved sophisticated means, but did not challenge the determination that Khan played a supervisory role in the offense. Following the arguments of defendant's counsel, the Court adjourned the sentence in contemplation of scheduling a <u>Fatico</u> hearing to determine the amount of the intended loss.

On March 4, 2004, Khan waived his right to a <u>Fatico</u> hearing on the issue of the intended loss and proceeded to sentencing. On March 9, 2004, the Court sentenced the Petitioner. The Court determined that the Guideline range was a total offense level 21, criminal history category I, with a term of imprisonment of 37 to 46 months. This level was based on the enhancement for his role as a supervisor, but the Court did not adjust his offense level under the sophisticated means enhancement.

The Court sentenced Khan to a term of 37 months in custody, 3 years supervised release, restitution in the amount of $325,007.45, and a fine in the amount of $5,000.

Khan did not appeal his conviction and filed this petition with prison officials on April 9, 2005.

## II. DISCUSSION

**A.     Section 2255 Statute of Limitations**

As an initial matter, the Court must determine whether Khan's claims are timely under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to 28 U.S.C. § 2255, ¶ 6, a federal prisoner has one year to file a habeas petition, measured from the latest of:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

The date on which a judgment becomes final is at the "conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); see Moshier v. United States, 402 F.3d 116, 118 (2d Cir. 2005). Under Federal Rule of Appellate Procedure 4(b)(1), in order for a defendant to timely seek

review of his conviction he must file a notice of appeal within ten days of the date of the entry of judgment. Fed. R. App. P. 4(b)(1).

In this case, the time for Khan to timely seek review of his March 9, 2004 conviction, was March 23, 2004, which is 10 days later, excluding intermediate Saturdays and Sundays. See Fed. R. App. P. 26(a). Accordingly, Khan had until March 23, 2005 to file his petition. Khan's petition declares that he gave the document to prison officials on April 9, 2005 for forwarding to the court. The Court received the petition on April 21, 2005.

Under the so-called "Prison Mailbox Rule," a pro se prisoner's petition is deemed "filed" at the moment of delivery to prison authorities for forwarding to the district court. Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001); see also Houston v. Lack, 487 U.S. 266, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988); Walker v. Jastremski, 430 F.3d 560, 562 (2d Cir. 2005). Thus, the Court considers Khan's petition filed on April 9, 2005, which falls outside the one-year statute of limitations under 28 U.S.C. § 2255.

Khan claims that his petition is timely within the one-year period allowed to assert rights following the decision by the Supreme Court in Booker. In doing so, Khan recognizes that the Second Circuit has held that Booker is not applied retroactive to cases on collateral review. Guzman v. United States, 404 F.3d 139, 144 (2d Cir. 2005). Nonetheless, in an attempt to circumvent the time-bar of his late-filed

ineffective assistance of counsel claim, Khan argues that the statute of limitations in section 2255 and the "doctrine of retroactivity" are two separate and distinct affirmative defenses. In other words, Khan's argument asks this Court to undertake a two-step analysis—by initially finding his petition timely as asserting "new rights" under <u>Booker</u>—and then addressing the merits of <u>both</u> his <u>Booker</u> and ineffective assistance of counsel claims. Although Khan admits that his <u>Booker</u> claim would immediately fail because the case is not applied retroactively, he believes that the merits of his ineffective assistance claim should be addressed without separately analyzing it for timeliness, even though the claim, if asserted alone, would be time-barred.

The Petitioner's well-crafted argument rests on faulty logic at both steps. In analyzing the timeliness of a petition under 28 U.S.C. § 2255, ¶6(3), the recognition of a new right by the Supreme Court and the application of that right retroactively are inseparable. Paragraph 6(3) of section 2255 allows a petition to be filed after the expiration of the one year time limit measured from the date the judgment became final, but only if two conditions apply. First, the petition must be filed within a year of "the date on which the right asserted was initially recognized by the Supreme Court . . . ." Second, that right must also be "made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255, ¶(3). In other words, "if th[e] [Supreme] Court decides a case recognizing a new right, a federal prisoner seeking to assert that right

7

will have one year from th[e] Court's decision within which to file his § 2255 motion. He may take advantage of the date in the first clause of ¶ 6(3) only if the conditions in the second clause are met." Dodd v. United States, 125 S. Ct. 2478, 2482, 162 L. Ed. 2d 343 (2005).

The Petitioner's interpretation ignores the second condition concerning the requirement that the decision be applied retroactively to cases on collateral review. Such a construction misconstrues the plain meaning of the statute, and in practice would permit prisoners to file habeas petitions within a year of almost every Supreme Court decision concerning criminal law. The Court doubts Congress intended such a consequence when it enacted the AEDPA.

Every circuit court to address collateral challenges under Booker, including the Second Circuit, has decided that the case did not establish a "watershed" rule so as to warrant retroactive application. See In re Zambrano, No. 05-3106, 2006 U.S. App. LEXIS 521 (D.C. Cir. Jan. 10, 2006); In re Elwood, 408 F.3d 211, 213 (5th Cir. 2005); Guzman v. United States, 404 F.3d 139, 144 (2d Cir. 2005); In re Olopade, 403 F.3d 159, 164 (3d Cir. 2005); United States v. Fowler, 133 Fed. Appx. 922, 922–23 (4th Cir. 2005); Varela v. United States, 400 F.3d 864, 868 (11th Cir. 2005); United States v. Price, 400 F.3d 844, 845 (10th Cir. 2005); Humphress v. United States, 398 F.3d 855, 860 (6th Cir. 2005); McReynolds v. United States, 397 F.3d 479, 481 (7th

Cir. 2005). This procedural barrier is fatal to the Petitioner's attempt at using Booker to revive his late-filed habeas petition.

Assuming Booker was applied retroactively, the Petitioner raises an interesting issue regarding whether a finding of timeliness on that claim requires the Court to consider all of the claims in the petition without independently analyzing each one for timeliness. Several courts have held, and a learned treatise argues, that a strict reading of 28 U.S.C. § 2241, the statute of limitations for prisoners in state custody that mirrors the statute of limitations in section 2255 petitions, requires a court to consider all the claims in a petition once one of the claims is considered timely under the statute. Walker v. Crosby, 341 F.3d 1240 (11th Cir. 2003); Oquendo v. Crosby, No. 3:03CV743, 2005 WL 2353890, *2 (M.D. Fla. Sep 26, 2005); Sykosky v. Crosby, No. 3:04CV416, 2005 WL 1334600, at *2, fn.2 (N.D. Fla. June 6, 2005); Daniels v. McAdory, No. 04 C 888, 2004 WL 906013, at *3 (N.D. Ill. Apr 27, 2004); (Shuckra v. Armstrong, No. 3:02CV583, 2003 WL 1562097, at *4 (D. Conn. March 21, 2003); 1 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure § 5.2b at 266–67 (4th ed. 2001).

In Walker, the Eleventh Circuit held that a single limitation period applies to the entire habeas application so long as one claim fits into one of the four subcategories delineated in the AEDPA statute of limitations. "The statute provides a single statute of limitations, with a single filing date, to be applied to the application

as a whole." Walker, 341 F.3d at 1243. The court rested its conclusion on the text and structure of the AEDPA. "The statute directs the court to look at whether the 'application' is timely, not whether the individual "claims" within the application are timely." Id. The court also relied on the Supreme Court's decision in Artuz v. Bennett, 531 U.S. 4, 121 S. Ct. 361, 148 L. Ed. 2d 213 (2000), which held that a state prioner's habeas petition may be considered "properly filed," even though it contains claims that are procedurally barred.

However, in Fielder v. Varner, 379 F.3d 113, 118 (3d Cir. 2004), the Third Circuit thoroughly analyzed the issue and disagreed with Walker on several grounds. First, the court found that reading the statute in that manner subjects the interpretation of the statute as a whole to internal inconsistencies. The statute states that the limitation period should begin to run "from the latest of" four possible triggers. In the case of multiple claims, the statute is silent as to which trigger the court should adopt, the earlier or the later. Nothing in the statute requires the court to automatically pick the later date over the earlier date. In petitions with multiple claims, Walker instructs the court to pick the later date, even though the statute is silent on the issue. On the other hand, if each claim is analyzed individually for timeliness, there is no need for the court to blindly pick the earlier or later date. Id. at 118–19.

Second, the Third Circuit criticized the Walker interpretation as contrary to common sense. "In both civil and criminal cases, statutes of limitations are applied on

a claim-by-claim or count-by-count basis. . . . [N]o one, we assume, would argue that, in a civil case with multiple federal claims, the statute of limitations must begin on the same date for every claim. Rather, each claim must be analyzed separately." Id. at 119.

Finally, the Third Circuit found that permitting late-filed claims to survive would produce "strange" results. "Specifically, the Walker interpretation has the strange effect of permitting a late-accruing federal habeas claim to open the door for the assertion of other claims that had become time-barred years earlier. . . . Neither Fielder nor the Walker Court has explained why Congress might have wanted to produce such results, and we cannot think of any plausible explanation." Id. at 120.

The Court agrees with the Third Circuit's interpretation of the statute of limitations and declines to adopt the Petitioner's position that his late-filed ineffective assistance of counsel claim can be considered because it is paired with a claim that is "newly recognized" by the Supreme Court. As such, both of Petitioner's claims in this petition are untimely.

Khan also argues that the Court should consider the petition timely under equitable tolling principles. Equitable tolling is only applicable in "rare and exceptional circumstances." Walker v. Jastremski, 430 F.3d 560, 564 (2d Cir. 2005); Doe v. Menefee, 391 F.3d 147, 159 (2d Cir. 2004); Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). The one-year statute of limitations of the AEDPA may be equitably

11

tolled where "extraordinary or exceptional circumstances" prevented the petition from being filed in a timely manner, but only if the prisoner "acted with reasonable diligence throughout the period he seeks to toll." McGinnis, 208 F.3d at 17. The burden is on the petitioner to show that the Court should toll the statute of limitations. See Hizbullahankhamon v. Walker, 255 F.3d 65, 75 (2d Cir. 2001). Examples of instances where courts have tolled the statute include "egregious attorney misconduct, the intentional confiscation of legal papers by prison authorities, serious physical or mental illness which prevents the petitioner from filing, or where a petitioner, through no fault of his own, first learns of the outcome of a final appeal after the time for seeking habeas has expired." Garcia v. Portuondo, 334 F. Supp. 2d 446, 458–59 (S.D.N.Y. 2004) (footnotes and quotations omitted).

Khan states that he was under the false assumption that he had 90 days from the date his judgment of conviction was entered to file a petition for certiorari with the Supreme Court. In support, Khan notes that in Fanfan v. United States, No. 03-47, 2004 WL 1723114 (D. Me. Jun 28, 2004), the Supreme Court granted certiorari before the First Circuit Court of Appeals decided the appeal from the district court decision. See United States v. Fanfan, 542 U.S. 956, 125 S. Ct. 12, 159 L. Ed. 2d 838 (2004) (granting certiorari). The Petitioner's reliance on Fanfan is misplaced. In that case a valid notice of appeal was filed prior to the expiration of the ten day limit to timely seek review of the conviction. See Fed. R. App. P. 4(b)(1). Here, the Petitioner never

12

filed a notice of appeal. As a consequence, the judgment of conviction became final after ten days, foreclosing any possibility of a writ of certiorari, and beginning the tolling of the one-year habeas statute of limitations.

Although the petitioner claims that he "reasonably believed" that he had 90 days from the time his judgment of conviction was entered, ignorance of the law is not a sufficiently extraordinary or exceptional circumstances to warrant equitable tolling of the statute of limitations. See Ayala v. Fischer, No. 04 Civ. 3404, 2004 U.S. Dist. LEXIS 21955, at *1 (S.D.N.Y. Nov. 2, 2004). "Neither a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling." Turner v. Johnson, 177 F.3d 390, 391–92 (5th Cir. 1999); see also Valverde v. Stinson, 224 F.3d 129, 133 (2d Cir. 2000); Huang v. United States, No. 03-3755, 2003 U.S. Dist. LEXIS 17409, at *6–7 (S.D.N.Y. Oct. 3, 2003);. Accordingly, the Court finds that the Petitioner's claims are time-barred under the AEDPA.

### B. Waiver of Right to Challenge Sentence

Khan faces another procedural hurdle before this Court can consider the merits of his habeas petition. Khan's plea agreement contained a waiver of his right to appeal or otherwise challenge his sentence if he received a sentence of 37 months or less. "It is by now well established that a knowing and voluntary waiver of the right to appeal is generally enforceable." United States v. Hernandez, 242 F.3d 110, 113 (2d

Cir. 2001); see also United States v. Haynes, 412 F.3d 37, 39 (2d Cir. 2005); United States v. Morgan, 406 F.3d 135, 137 (2d Cir. 2005); United States v. Garcia, 166 F.3d 519, 521 (2d Cir. 1999); United States v. Chen, 127 F.3d 286, 289 (2d Cir. 1997); United States v. Yemitan, 70 F.3d 746, 747 (2d Cir. 1995); United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir.1993) ("In no circumstances ... may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement.").

A defendant may also waive his right to bring a petition pursuant to section 2255. See Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195–96 (2d Cir. 2002); Garcia-Santos v. United States, 273 F.3d 506, 508–09 (2d Cir. 2001); Muniz v. United States, 360 F. Supp. 2d 574, 577 (S.D.N.Y. 2005). Further, courts have held that a section 2255 motion to vacate is considered a way to "otherwise challenge" a conviction. See United States v. Pipitone, 67 F.3d 34, 39 (2d Cir. 1995) ("Whatever linguistic distinction may be made between an 'appeal' and a § 2255 petition, we are loathe to countenance so obvious a circumvention of a plea agreement"); Diaz v. United States, 02-cv-3036 (RR), 2002 U.S. Dist. LEXIS 19916, at 3–4 (E.D.N.Y. Sept. 27, 2002); Yoon v. United States, No. 99-CV-5661 (RR), 2000 U.S. Dist. LEXIS 5176, at *2 (E.D.N.Y. March 17, 2000).

The Second Circuit has recognized a very narrow set of exceptions to the general rule on the enforceability of waivers, such as where: (1) the waiver was not made knowingly, voluntarily, and competently; (2) the sentence imposed was based on constitutionally impermissible factors; (3) the government breached the plea agreement; or (4) the court failed to enunciate any rationale for the sentence. See United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000).

Applying these principles, the Petitioner's express waiver of the right to "file an appeal or otherwise challenge the conviction or sentence in the event that the Court imposes a term of imprisonment of 37 months or below" appears to preclude his section 2255 challenge to the 37 month sentence he received. There is no reason to conclude that Khan's waiver was anything but knowing and voluntary. The Petitioner was instructed at the plea hearing by the Magistrate Judge as to the consequences of such provision. In addition, the Petitioner does not argue that the sentence was based on constitutionally impermissible factors. See United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998) (holding that a section 2255 petitioner who has waived his right to collaterally attack his sentence may not "dress up" his sentence challenges as constitutional violations); Santana v. United States, No. 04 Civ. 1111(SAS), 2005 WL 180932, at *3 (S.D.N.Y. Jan. 26, 2005). Further, the Court clearly explained the rationale for its sentence. Thus, there is no basis for permitting the Petitioner to

circumvent the express waiver of the right to "otherwise challenge the conviction or sentence" in the Plea Agreement.

**C.     Ineffective Assistance of Counsel Claim**

Khan argues that his counsel, David Touger, Esq., was ineffective because he did not challenge the recommendation in the PSR to add a four point enhancement for his role in the offense under U.S.S.G. § 3B1.1(a).  In order to prevail on an ineffective assistance of counsel claim, a petitioner must establish that his counsel performed deficiently and that the deficiency caused actual prejudice to his defense.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984); Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002).  Under the first prong, the court must "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S. Ct. 2052.  The petitioner may prove the deficiency prong by establishing that his attorney's conduct fell "outside the wide range of professionally competent assistance . . . ." Id. at 690, 104 S. Ct. 2052.  He may establish prejudice by showing a "reasonable probability" exists that, but for the deficiency, "the result of the proceeding would have been different." Id. at 694, 104 S. Ct. 2052.  "A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal." Dunham, 313 F.3d at 730 (citing Strickland, 466 U.S. at 694, 104 S. Ct. 2052).  Also, the Second Circuit has instructed that a reviewing court should be "highly deferential" to counsel's

16

performance, because " 'it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.' " Pratt v. Greiner, 306 F.3d 1190, 1196 (2d Cir. 2002) (quoting Strickland, 466 U.S. at 689, 104 S.Ct. 2052).

Section 3B1.1(a) of the Guidelines states that "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive . . ." the offense level should be increased by four levels to reflect his aggravating role in the offense. U.S.S.G. § 3B1.1(a); see, e.g., United States v. Persico, 164 F.3d 796, 804 (2d Cir. 1999).

Here, the PSR specifically mentions four participants that worked for Khan, Imran Qurashi, Mohammad Malik Saeed, Mohsin Atta, and Abdul Rehman. In addition, the PSR states that "Khan asked various known and unknown individuals to receive and negotiate refund checks." This record sufficiently supports the upward sentencing adjustment for a supervisory role. It is reasonable to assume that counsel did not object to the role enhancement because, given the statements contained in the PSR, such an objection would have been futile.

Further, counsel's overall representation of the Petitioner rebuts the claim of ineffective representation. See Kimmelman v. Morrison, 477 U.S. 365, 386, 91 L. Ed. 2d 305, 106 S. Ct. 2574 (1986). As evidenced by the objections made during the sentencing proceedings, when defense counsel believed he could support challenges to

performance, because " 'it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.' " Pratt v. Greiner, 306 F.3d 1190, 1196 (2d Cir. 2002) (quoting Strickland, 466 U.S. at 689, 104 S.Ct. 2052).

Section 3B1.1(a) of the Guidelines states that "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive . . ." the offense level should be increased by four levels to reflect his aggravating role in the offense. U.S.S.G. § 3B1.1(a); see, e.g., United States v. Persico, 164 F.3d 796, 804 (2d Cir. 1999).

Here, the PSR specifically mentions four participants that worked for Khan, Imran Qurashi, Mohammad Malik Saeed, Mohsin Atta, and Abdul Rehman. In addition, the PSR states that "Khan asked various known and unknown individuals to receive and negotiate refund checks." This record sufficiently supports the upward sentencing adjustment for a supervisory role. It is reasonable to assume that counsel did not object to the role enhancement because, given the statements contained in the PSR, such an objection would have been futile.

Further, counsel's overall representation of the Petitioner rebuts the claim of ineffective representation. See Kimmelman v. Morrison, 477 U.S. 365, 386, 91 L. Ed. 2d 305, 106 S. Ct. 2574 (1986). As evidenced by the objections made during the sentencing proceedings, when defense counsel believed he could support challenges to

the PSR, he made them. Counsel objected to the loss calculation and successfully objected to the PSR's recommendation that the Court impose an enhancement for sophisticated means.

For all these reasons, Khan's <u>Booker</u> and ineffective assistance of counsel claim must be rejected as both procedurally barred and without merit.

### III. CONCLUSION

For the reasons stated above, Khan's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is DENIED. Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c)(2), a certificate of appealability is DENIED, as the Petitioner fails to make a substantial showing of a denial of a constitutional right. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336, 123 S. Ct. 1029, 1039, 154 L. Ed.2d 931 (2003); <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 112 (2d Cir. 2000).

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
February 11, 2006

*/s/ Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge